UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------X

JOHN D. LANE,

        Plaintiff,               Case No. 3:02CV1038 (AWT)

-v-

JEFFERSON PILOT FINANCIAL
INSURANCE COMPANY,

        Defendant.          February 17, 2004
------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

      The plaintiff, John D. Lane (alternatively "John Lane," "Lane" or the "Plaintiff") by his attorneys, JACOBS PARTNERS, LLC, hereby submits this Memorandum of Law and Points of Authority in Support of Motion for Partial Summary Judgment against the defendant, Jefferson Pilot Financial Insurance Company (alternatively "Jefferson Pilot" or the "Defendant").

### I. PRELIMINARY STATEMENT

      By this motion for partial summary judgment, John Lane seeks dismissal of the Second, Third, Fourth and Fifth Affirmative Defenses (collectively the "Affirmative Defenses") set forth in the Defendant's Amended Answer filed April 3, 2003, all of which Affirmative Defenses relate to the Defendant's contention that John Lane, when he applied in 1994 for the disability insurance policy in issue, failed to disclose a prior incident of depression. This motion addresses the following issues: (1) is there a genuine issue of fact whether John Lane failed, when he applied for the disability policy in issue, to disclose a prior incident of depression; and (2) are the Affirmative Defenses barred as a matter of law under the terms of the disability insurance policy in issue. The relevant facts concerning John Lane's disclosures in connection with his application for the Policy are not subject to genuine dispute and establish, as a matter of law, that the Plaintiff made full disclosure to the

Defendant when he applied for the disability policy. The terms of the disability policy are clear and unambiguous, and bar the Affirmative Defenses entirely. Accordingly, John Lane is entitled to partial summary judgment dismissing the Affirmative Defenses entirely.

## II. BACKGROUND

*A. Factual Background*

In 1994, the Plaintiff was a very successful retail securities broker and investment banker. He was also the Chairman of the Securities Industry Association ("SIA") Local Firms Committee. In about April or May of 1994, the Plaintiff began discussions with agents for Chubb LifeAmerica ("Chubb") about the possibility of the Plaintiff taking out a disability insurance policy from Chubb and endorsing Chubb's disability insurance product to other members of the SIA Local Firms Committee at an upcoming trade convention. Working through Chubb's agent, Corporate Compensation Plans, Inc. ("CCP") of Danbury, Connecticut, the Plaintiff submitted the necessary paperwork to apply for Chubb's disability insurance policy. This paperwork included various disclosures regarding the Plaintiff's medical background. On October 28, 1994, Chubb issued a Disability Income Policy, designated as Policy number 009002259 (the "Policy") in which John Lane is the insured. A true and accurate copy of the Policy is attached to the Affidavit of Attorney Gerry A. McMahon as Exhibit 1, A. Jefferson Pilot subsequently became the successor in interest to Chubb and is the current obligor under the Policy. (See Complaint, ¶6, and Answer, ¶6, Exhibit 1, B).

Pursuant to the terms of the Policy, including the "Own Occupation Rider", John Lane is entitled to receive a monthly disability insurance benefit for periods of total disability when, due to injuries or sickness, he is not able to perform the substantial and material duties of his occupation, and he is receiving care by a physician which is appropriate for the condition causing his disability. See Policy, Rider, Definition 1.4. The Plaintiff timely and fully paid the Defendant (or its predecessor, as the case may be) all of the required annual premiums for the Policy, and the Policy has remained in full force and effect since it was first issued in

1994. See Complaint, ¶ 12; Answer, ¶12, Exhibit 1, B.

As a retail securities broker and investment banker, the Plaintiff was employed with various securities brokerage firms and/or investment banking firms. Throughout his career, the Plaintiff did not receive salary or draw from the securities brokerage firms that employed him; rather he was paid strictly on commission basis from the revenue and fees generated by the business transactions that he successfully brought to completion.

Commencing some time during 1999, Lane began to suffer the detrimental effects of mental depression. The Plaintiff's depression began to impact adversely on his ability to conduct his profession. The Plaintiff sought professional treatment for his condition, first from Dr. Bert Diament in 1999, and then later, as his condition deteriorated, from Dr. Cyril Waynik in 2001. The Plaintiff has continued treatment with Dr. Waynik ever since. As a result of his depression, the Plaintiff's income declined drastically.

As a result of his illness, the Plaintiff became disabled within the meaning of the Policy. On or about May 16, 2001, the Plaintiff contacted the Defendant and advised the Defendant that he intended to file a claim for disability benefits under the Policy. (cite to depo transcript). Thereafter, on or about May 25, 2001, the Plaintiff submitted a written claim form benefits under the Policy. The Defendant denied the Plaintiff's claim for disability benefits, and continued to deny such benefits notwithstanding repeated demands by the Plaintiff and his counsel. This civil action resulted.

### B. Procedural Background

The Plaintiff commenced this action on June 17, 2002 in order to recover damages against the Defendant arising from its failure to honor the Policy and pay benefits to the Plaintiff. A true copy of the Complaint (*doc no. 1*) is attached hereto as Exhibit 1, B. On or about August 14, 2002, the Defendant filed an answer (*doc no. 5*). The Defendant's August 14, 2002 Answer included a single affirmative defense ("[t]he Complaint fails to state a claim upon which relief can be granted"). On September 13, 2002, the parties submitted their Joint Report of Parties' Planning Meeting (*doc no. 6*). On September 24, 2002, the Court entered

its endorsement approving the parties' joint planning report and set the discovery bar date to April 15, 2003. The discovery deadline was extended several times, each time at the request of the Defendant. Ultimately, discovery closed on December 31, 2003.

On or about November 8, 2002, the Defendant served the Plaintiff with its First Set of Interrogatories and Request for Production pursuant to Fed. R. Civ. P. Rules 26 and 33. A copy of the Defendant's First Discovery Requests is attached as Exhibit 1, C. Interrogatory Request No. 6 in the Defendant's First Discovery Request directed the Plaintiff to disclose whether or not he was ever an in-patient or received out-patient treatment for alcohol, drug use or any psychiatric or mental illness, and if so, to provide certain details. (See Defendant's First Discovery Request, Interrogatory No.6). On December 11, 2002, the Plaintiff served his responses to the Defendant's First Discovery Request. The Plaintiff objected to Interrogatory No. 6 on relevancy grounds. Subject to that objection, the Plaintiff provided a substantive response to the interrogatory which included the following statement:

> Previously, in about 1984, the Plaintiff briefly received out patient care, under an experimental program, for depression at Yale New Haven Hospital. This treatment as (sic) very brief, as the Plaintiff recovered from the depression relatively quickly.

On or about March 14, 2003, the Defendant filed a motion and supporting memorandum (*doc nos. 19 and 20*) wherein the Defendant sought leave of the Court to amend its affirmative defenses. The Defendant asserted in its memorandum, based upon the Plaintiff's response to the Interrogatory No. 6, that the Plaintiff "made a false statement on his application for the Policy with regard to his history of depression" and therefore is not entitled to coverage under the Policy. The Defendant sought to amend the answer to reflect this defense. On April 3, 2002 the Court granted the Defendant's motion to amend its affirmative defenses and Defendant filed its Amended Answer and Affirmative Defenses (the "Amended Answer", Exhibit 1, D) (*doc. no. 21*). The Amended Answer sets forth four additional affirmative defenses, all related to the Plaintiff's incident of depression in 1984.

During discovery, the Plaintiff propounded discovery requests to the Defendant and to its

4

reinsurer, Paul Revere. The Plaintiff also took discovery from CCP, including deposition and subpoena *duces tecum*. In the course of this discovery, the Plaintiff uncovered evidence which established that the Plaintiff had in fact fully disclosed his prior incident of depression to the Defendant when he applied for the Policy. On May 23, 2003, the Plaintiff's attorney, Robert M. Fleischer, sent a letter to Defendant's attorney, Pamela L. Cameron, demanding pursuant to Fed. R. Civ. P. 11 that the Defendant withdraw the Affirmative Defenses. The Defendant declined to withdraw the Affirmative Defenses.

### III. LAW AND ARGUMENT

#### A. Standard for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, he may discharge this burden by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case on which that party would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970) The nonmoving party then has the burden of coming forward with specific facts showing that there is a genuine issue for trial by a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp, at 322.[1]

The court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir.1994). However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party and grant summary

---

[1] Insofar as the Defendant's Affirmative Defenses are based upon misrepresentation, the burden of proof on the Affirmative Defenses is squarely upon the Defendant. See Variety Homes, Inc. v. Postal Life Insurance Company, 287 F. 2d 320, 321 (2d Cir. 1961) (finding that defendant/insurer bares burden of proof on affirmative defense that plaintiff/insured made material misrepresentations when he applied for policy in issue).

judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. See Knight v. United States Fire Ins. Co., 804 F.2d 9, 12-15 (2d Cir.1986), ) cert. denied, 480 U.S. 932 (1987); Argus Inc. v. Eastman Kodak Co., 801 F.2d 38, 45 (2d Cir.1986), cert. denied, 479 U.S. 1088 (1987). The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**B. The Affirmative Defenses Fail Because John Lane Made Full Disclosure in his Application for the Policy**

Plaintiff's insurance underwriting process involved a Trial Application and a Final Application. The Trial Application process began in May 1994. Defendant's vice-president of underwriting, Susan Schoenfeld, participated in the underwriting of Plaintiff's policy in 1994 when she was an assistant vice president of underwriting. Susan Schoenfeld dep., p. 12. Schoenfeld explained the "trial application" process as follows: "Usually it was a process where an agent would submit medical information for an underwriter to review and give an opinion on an informal basis." Susan Schoenfeld dep., p. 24. Medical information that agents would submit included attending physician's statement (APS) records, an exam, blood study done for another company, a medical history form. Susan Schoenfeld dep., pp 24-25, Exhibit 1-N. It was up to the agent to send in whatever they deemed appropriate to request an opinion. Susan Schoenfeld dep., p. 25. The underwriter would review the information provided by the agent and then either request additional information or provide a tentative opinion. Susan Schoenfeld dep., pp. 25-26.

On May 24, 1994, John Lane provided a completed Chubb LifeAmerica Medical History Form to Chubb's agent, CCP in which he disclosed the 1983/1984 depression incident (the "Disclosure").

The Paul Revere Reinsurance Medical Manual (the "Medical Manual") was used to provide guidelines for underwriting action. Susan Schoenfeld dep. p., 105. For a stressor such as the one disclosed by Plaintiff in May 1994, the Medical Manual, Neurological and

6

Psychiatric section, would be applied. Medical Manual, pp. 40-41, Exhibit 1-J. The Medical Manual referred to the DSM-III. The only DSM-III diagnosis which could appropriately be applied to the 1983/1984 incident is "Adjustment Disorders (309.00-309.90). Medical Manual, pp. 40-41, Exhibit 1-J.

During the trial application process, Susan Schoenfeld had specifically asked, in a memo to CCP, if there was any additional anxiety or stress history and received the National Life of Vermont ("NLV") application in response. Susan Schoenfeld dep., p. 112, Exhibit 1-N; Susan Schoenfeld Memo dated July 25, 1994, Exhibit 1-L, NLV application, Exhibit 1-K. It would not have been standard procedure to follow-up on that information "given the length of time that had passed....And the fact that it was due to a specific stressor." Susan Schoenfeld dep., p. 115, Exhibit 1-N. Furthermore, Defendant "wouldn't normally follow up on every yes answer. We just rely that the answer is complete and true because the person signs a statement saying it is complete and true. Otherwise, we'd be out there asking them for follow-up of every yes answer. Susan Schoenfeld dep., p. 116, Exhibit 1-N.

Even if the Defendant chose to follow up on the Disclosure, Plaintiff's Disclosure met all of the "Favorable" "Underwriting Considerations" set forth in the Medical Manual, pp. 40-41, i.e. one episode ("anxiety due to relocation and job change", NLV application, Exhibit 1-K; "depression" and "Diagnos (sic) Move Fm. Col(sic)"; Exhibit 1-H), resolved with little or no treatment ("2-5 times", NLV application, Exhibit 1-K), more than two years since resolved (10 years), and well adjusted. The Medical Manual "Underwriting Action" for a "single incident" "over 5 years since end of treatment" would be to issue the policy with the "Standard" exclusionary period, exactly as the Defendant issued the Plaintiff's policy. Medical Manual, p. 41, 1-J.

On August 23, 1994, Plaintiff met with Connie Milano, a paramedical technician to complete the NLV application and medical history form. Lane dep., pp. 499-500, Exhibit 1-M.

Before completing the Final Application, Plaintiff met with a CCP representative to

discuss four areas of concern expressed by Defendant's underwriter, Susan Schoenfeld. Lane dep., p. 528, 536, Exhibit 1-M. The four areas of concern were: 1) high blood pressure, 2) depression, stress, 3) Mr. Lane's private pilot's license, and 4) positive titer on Lyme disease test. Lane dep., pp. 528, 535, Exhibit 1-M.

The CCP representative explained to Plaintiff that those four items created concerns regarding the amount of insurance coverage he was seeking. Lane dep., p. 528, Exhibit 1-M. The CCP representative had a copy of the Trial Application and went through it with Plaintiff while he filled out the Final Application. Lane dep. pp. 528-529, Exhibit 1-M. The CCP representative discussed the Disclosure with Plaintiff. Plaintiff informed the CCP representative about the Disclosure including that he participated in a Yale-New Haven study, what he remembered about it, the amount of times he went, and that the depression passed. Lane dep., p. 530. The CCP representative then questioned Plaintiff further about the Disclosure. Mr. Lane informed him that he had not had any bouts of depression before the Disclosure and had not any bouts of depression since the Disclosure. Lane dep., p. 530, Exhibit 1-M. Mr. Lane told the CCP representative that the Yale-New Haven people attributed the depression to Plaintiff adjusting to his move from Colorado. Lane dep., p. 530 Exhibit 1-M.

In response to Mr. Lane's disclosures, the CCP representative told him that the Disclosure was not pertinent to his insurance application and that he did not have to mark "yes" to the question relating to "depression" on the Final Application, because he had not had another bout of depression or stress and it had been 10 years. Lane dep., pp. 530, 532, 534, Exhibit 1-M.

The CCP representative advised Plaintiff that he needed to disclose his high blood pressure, which he did. Lane dep., p. 532, Final Application, sub-part G.1.d., Exhibit 1-A.

To satisfy the Defendant's concerns regarding his pilot's license, Plaintiff signed a separate document in which he agreed not to fly as pilot in command while the policy was in place. Lane dep., p. 533, Exhibit 1-M.

8

On September 23, 1994, Defendant was in receipt of the Final Application for insurance. Susan Schoenfeld dep., p. 124, Exhibit 1-N. On September 29, 1994, at Susan Schoenfeld's request, CCP forwarded the NLV application and medical history form to Defendant. Susan Schoenfeld dep., p. 124, Exhibit 1-N. Despite the Plaintiff's Disclosure on the NLV application, Schoenfeld determined that, because it was "a long time ago" and it addressed "anxiety", "there wasn't any reason to amend it to our application." Susan Schoenfeld dep., pp. 126-127, Exhibit 1-N. On October 14, 1994, Plaintiff provided Defendant with medical releases for all of his treating physicians.

A contract of agency creates a principal-agent relationship. The principal in such a relationship is "bound by, and liable for, the acts which his agent does with or within the actual or apparent authority from the principal, and within the scope of the agents employment. Bank of Montreal v. Gallo, 3 Conn. App. 268, 273 (1985) (citing 3 Am.Jur.2d. Agency §261). Furthermore, it is the general rule, settled by an unbroken current of authority, that notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal. Id. When an agent acting within the scope of his authority obtains knowledge of a fact relevant to the transaction in which he is engaged, ordinarily that knowledge is imputed to his principal, and the knowledge of the agent is the knowledge of the principal. Reardon v. Mutual Life Ins. Co. of New York, 138 Conn. 510, 516 (1952) (citing MacKay v. Aetna Life Ins. Co., 56 Conn. 528, 539; Bernhard v. Rochester German Ins. Co., 79 Conn. 388, 393; and McGurk v. Metropolitan Life Ins. Co., 56 Conn. 528, 539.

There is no genuine dispute that: (1) CCP was, at the time it handled John Lane's application for the Policy, a duly authorized agent of the Plaintiff (or its predecessor, Chubb; (2) CCP, when it handled the Plaintiff's application for the Policy, including taking and processing the Trial Application; was acting within the scope of its authority as an agent of the Defendant; (3) that the Plaintiff clearly and unequivocally disclosed in the Trial Application his prior episode of depression that occurred in 1984. As the Defendant's agent,

9

CCP's knowledge of the Plaintiff's episode of depression must be imputed to the Defendant. Whether or not CCP passed the Trial Application on to the Defendant is irrelevant to this determination.[2]

**Elevated Standard of Proof for Fraud Claims**

Insofar as the Affirmative Defenses are based upon an alleged fraud/ misrepresentation by John Lane in connection with his application for the Policy, the Defendant must establish all of the elements of fraud/misrepresentation by the heightened standard of "clear and satisfactory evidence" in order to succeed on the Affirmative Defenses. Johnson v. Chesebrough-Pond's USA Co., 918 F.Supp. 543 (D.Conn. 1996) (citing Kilduff v. Adams, Inc. 219, Conn. 314, 330 (1991) in order to succeed at trial. The elements of fraud are (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by party making it; (3) that it was made to induce other party to act on it; and (4) that latter did so act on it to his detriment. Billington v. Billington, 220 Conn. 212, 217(1991). When considering a motion for summary judgment challenging a claim based on fraud or misrepresentation, the Court's assessment of the evidence and determination whether there is a genuine issue of material fact should be made in light of the heightened evidentiary standard. See U.S. v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborough, Conn., 897 F.2d 87, 101 (D.Conn. 1990) (observing that summary judgment necessarily implicates the substantive evidentiary standard of proof that would apply at trial on the merits).

The Defendant cannot dispute that John Lane disclosed his 1984 episode of depression in the Trial Application. Nor can the Defendant dispute that CCP was the Defendant's duly appointed agent for the purpose of handling the Plaintiff's application and was authorized

---

[2] To support its Affirmative Defenses, the Defendant asserts that "[i]n applying for his disability policy with Jefferson Pilot, Lane submitted to Jefferson Pilot only the application in which he did not disclose, that he had been treated for or diagnosed with depression. Jefferson Pilot relied on that application when it issued Lane's Policy." See Letter from Pamela Cameron, Esq. to Gerry A. McMahon, Esq. dated February 5, 2004, Exhibit   to McMahon Affidavit. First, the Defendant ignores entirely the agency relationship between it and CCP, and the fact that CCP did in fact receive the Trial Application. Second, the Defendant seems to suggest that a material fact, once disclosed to an insurance company or its agent in the course of application for a policy, can, somehow, be subsequently "undisclosed." The Defendant's premise is illogical and contrary to common sense. Moreover, its is difficult to understand how the Defendant's reliance on the subsequent *non-disclosure* can be reasonable given its actual knowledge.

to take application forms from the Plaintiff, including the Trial Application. Moreover, the Defendant cannot dispute that John Lane submitted the Trial Application to CCP. Taken together, these facts demonstrate that there is no genuine issue of fact that John Lane disclosed his 1984 episode of depression to the Defendant, through Defendant's authorized agent, when he applied for the Policy in 1994. Accordingly, the Affirmative Defenses must fail as a matter of law.

Moreover, regardless whether the Defendant can establish that there is a genuine issue of material fact as to whether the Plaintiff failed to disclose his 1984 episode of depression when he applied for the Policy in 1994, the Defendant will not be able to establish the element of reliance. As explained above, pursuant to the Medical Manual the Plaintiff would have received a favorable underwriting determination. Thus, the Defendant's own underwriting guidelines establish that the Plaintiff's 1984 depression would not have impacted the underwriting of the Policy.

## C. The Affirmative Defenses Are Barred Under the Express Terms of the Policy

Even assuming, *arguendo*, that John Lane failed to disclose his 1984 incident of depression to the Defendant when he is applied for the Policy in 1994, the Defendant' is nonetheless barred from denying benefits to the Plaintiff based upon such alleged failure. The Policy contains an express provision in Part 4 that recites precisely how the Defendant is to deal with a Policy claim for a pre-existing condition:

> **Part 4**
> **PRE-EXISTING CONDITIONS**
> **LIMITATIONS**
> We will not pay benefits for a Pre-Existing Condition. Pre-Existing Condition means a mental or physical condition:
> a. which was materially misrepresented or not disclosed in your application; and
> b. for which you received a Physician's advise or treatment during the 5 years prior to the Issue Date; or
> c. which caused symptoms during the 5 years prior to the Issue Date for which an ordinarily prudent person would seek medical attention.
>
> No claim for loss incurred or disability that starts after two (2) years from the Issue Date of the policy will be reduced or denied on the ground that a mental

11

or physical condition not excluded by name or specific description had existed during the five years before the Issue Date of the Policy.

First, the incident of depression disclosed by the Plaintiff in his response to Interrogatory No. 6 occurred in 1984, nearly ten years before the Plaintiff even applied for the Policy. See Plaintiff's Responses to Defendant's First Set of Discovery, Interrogatory No. 6. Moreover, the incident was brief in duration. See Discovery Response, Exhibit 1-E. The Defendant can recite no evidence which can demonstrate that the Plaintiff was still suffering from the symptoms of that episode in 1989 or any time within five years prior to the Issue Date. Consequently, the 1984 incident fails to meet the definition of "Pre-Existing Condition" expressly stated in Part 4 of the Policy.

Second, the Plaintiff's current depression did not begin until some time during 1999, nearly four years after the Policy Issue Date.[3] Further, the Plaintiff seeks recovery of disability benefits commencing in April, 2000. See Complaint, ¶¶ 35-37. Insofar as subparagraph *a.* of the first paragraph of Part 4 of the Policy refers to conditions that were *materially misrepresented*, (e.g. fraudulent misrepresentation) and the second paragraph makes no exception for conditions that were *materially misrepresented*, then the second paragraph must be read to apply to all pre-existing conditions, regardless whether the policy holder's failure to disclose was inadvertent or intentional. The Affirmative Defenses, therefore are all barred under the second paragraph of Part 4 of the Policy.

The Policy also contains an incontestability provision in Part 7, subpart 7.2, which provides as follows:

> **7.2 Time Limit on Certain Defenses**
> This policy shall be incontestable, except for nonpayment of premium, after it has been in force for two years from its Issue Date.

There has been no contention by the Defendant that John Lane failed to timely pay premiums for the Policy. The Policy was issued on October 28, 1994, at least four years before the Plaintiff began to suffer the effects of depression and at least six years before the

---

[3] Given the nature of this illness, it is difficult to determine the precise date of the onset. However, the Plaintiff believes that it began some time during 1999. Complaint, ¶ 19, Exhibit 1-B. The Plaintiff first began treatment for his depression in 1999, Complaint, ¶ 21, Exhibit 1-B.

Plaintiff submitted a claim to the Defendant for benefits under the Policy. Connecticut, by statute, requires all health insurance policies issued or delivered to any person in this state contain an incontestability clause such as the one contained in Part 7, section 7.2 of the Policy. See C.G.S. § 38a-483(a)(2)[4]. These mandated clauses have been required for many years and have been consistently and uniformly upheld in actions where insurers contest or dispute the validity of an insurance policy after the expiration of the contestable period. Minnesota Mut. Life Ins. Co. v. Ricciardello, 1997 WL 631027, *2-4 (D.Conn.1997). Once the incontestability period runs, the insurer cannot contest the policy, whether by a claim of breach of contract, fraud, misrepresentation, or breach of the covenant of good faith and fair dealing. Id. (citing Manzella v. Indianapolis Life Ins. Co., 814 F.Supp. 428, 432 (E.D.Pa.1993)). In this case, the contestability period under the Policy has run and, therefore, the Affirmative Defenses are barred under section 7.2 of the Policy.

A contract of insurance must be viewed in its entirety. Flint vs. Universal Machine Co., 238 Conn. 637, 643 (1996). The words of an insurance policy must be accorded their natural and ordinary meaning, and any ambiguity in the words must be construed in favor of the insured. Hansen v. Ohio Casualty Co., 239 Conn. 837, 842 (1996). Every provision of an insurance contract is to be given effect, if possible, and no word or clause eliminated as meaningless, or disregarded as inoperative, if any reasonable meaning consistent with the other parts of the policy can be given to it. Downs v. National Casualty Co., 146 Conn. 490, 495 (1959). An insurance contract does not become ambiguous or susceptible of multiple constructions simply because lawyers or laymen contend for different meanings. Id. at 494; see also Leathermode Sportswear, Inc. v. Liberty Mutual Ins. Co., 150 Conn. 63, 67 (1962); General Construction Co. v. Aetna Casualty & Surety Co., 151 Conn. 684, 685 (1964).

The Defendant's continued assertion of the Affirmative Defenses amounts to a baseless and desperate attempt to by circumvent Parts 4 and 7.2 of the Policy in order to avoid its contractual obligation to the Plaintiff. The Defendant's effort is in vain, as the Affirmative

---

13

[4] Pursuant to C.G.S. § 38a-469, the term "health insurance" policy is defined to included "(5) disability income protection coverage."

Defenses are entirely inconsistent with the clear and unambiguous terms of the Policy, and must be dismissed. To hold otherwise would render Parts 4 and 7.2 of the Policy meaningless and inoperative.

## II. CONCLUSION

As explained above, there is not sufficient evidence supporting the Affirmative Defenses for a jury to return a verdict in favor of the Defendant, and the Affirmative Defenses, therefore, fail as a matter of law. The Plaintiff respectfully request that the Court grant the Plaintiff's Motion for Partial Summary Judgment and dismiss the Defendant's Second, Third, Fourth and Fifth Affirmative Defenses.

>                    The Plaintiff,
>                    JOHN D. LANE
>
>                    By their attorneys,
>                    JACOBS PARTNERS LLC
>
>                    _____
>                    Gerry A. McMahon (CT24881)
>                    Robert M. Fleischer (CT11960)
>                    Mark R. Jacobs (CT12255)
>                    Merritt View
>                    383 Main Avenue
>                    Norwalk, CT 06851
>                    Tel: (203) 846-6622

## CERTIFICATION

      This is to certify that a copy of the foregoing was sent, via facsimile and via first class mail, postage paid, on the 17th day of February, 2004, upon the following:

Pamela Levin Cameron, Esq.
Lewis K. Wise, Esq.
David J. Heinlein, Esq.
Elizabeth J. Robbin, Esq.
Rogin, Nassau, Caplan,
    Lassman & Hirtle, LLC
City Place I, 185 Asylum Street
Hartford, CT 06103-3460

                                                                   Robert M. Fleischer

1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------X

JOHN D. LANE,

      Plaintiff,                               Case No. 3:02CV1038 (AWT)

-v-

JEFFERSON PILOT FINANCIAL
INSURANCE COMPANY,

      Defendant.                           February 17, 2004
------------------------------------------------------------X

## AFFIDAVIT OF GERRY A. McMAHON

STATE OF CONNECTICUT    :
                                         : ss. Norwalk
COUNTY OF FAIRFIELD      :

    I, **Gerry A. McMahon**, upon oath depose and state as follows:

    1. I am over the age of eighteen years and I believe in the obligations of an oath.

    2. I am a member of the Bar of the states of Connecticut, Michigan and New York, and admitted to practice before this Court. I am associated with Jacobs Partners LLC, counsel to John Lane, the plaintiff in the above-captioned actions. As such, I am familiar with the facts set forth herein based upon my personal knowledge and my review of the files in my firm's possession. I provide this affidavit in support of John Lane's Motion for Partial Summary Judgment.

1

3. Attached hereto as **Exhibit 1-A** is a true and correct copy of the Disability Insurance Policy No. 009002259, issued on October 28, 1994 to John Lane

4. Attached hereto as **Exhibit 1-B** is a true and correct copy of the Plaintiff's Complaint in this action (*court doc. no. 1*)

5. Attached hereto as **Exhibit 1-C** is a true and correct copy of the Defendant's First Set of Interrogatories and Requests For Production issued by the Defendant in this action on November 8, 2002.

6. Attached hereto as **Exhibit 1-D** is a true and correct copy of the Defendant's Amended Answer and Affirmative Defenses (*court doc. no. 21*).

7. Attached hereto as **Exhibit 1-E** is a true and correct copy of the Plaintiff's initial Responses To Defendant's First Set of Interrogatories and Requests for Production, served by the Plaintiff on December 11, 2002.

8. Attached hereto as **Exhibit 1-F** is a true and correct copy of the Plaintiff's Third Set of Interrogatories and Requests for Production, dated December 29, 2003.

9. Attached hereto as **Exhibit 1-G** is a true and correct copy of the letter dated February 5, 2003 from Pamela Levin Cameron (Defenant's counsel) to Gerry A. McMahon, regarding Defendant's supplemental response to the Plaintiff's Third set of Interrogatories and Requests for Production

10. Attached hereto as **Exhibit 1-H** is a true and correct copy of a completed "medical history" form bearing the logo of Chubb LifeAmerica. This document bears a exhibit sticker marked "7-A, 5-9-03" and was produced to the Plaintiff's counsel by a representative of Corporate Compensation in response to a subpoena *duces tecum* duly issued by an attorney with Jacobs Partners LLC. This document is referred to the

Plaintiff's Memorandum in Support of his motion for summary judgment as the "Trial Application."

11. Attached hereto as **Exhibit 1-I** is a copy of the Paul Revere Disability Income Underwriting Manual. This document was produced to Plaintiff's counsel in response to a subpoena *duces tecum* issued to Paul Revere.

12. Attached hereto as Exhibit **1-J** is a copy of the General Agents Contract between Chubb LifeAmerica and Corporate Compensation Plans Inc., produces to Plaintiff's counsel in response to a subpoena *duces tecum*.

13. Attached hereto as **Exhibit 1-K** is a true and correct copy of a completed form titled "Application for Disability Insurance - Part II" which bears the corporate logo of National Life of Vermont. This document was produced by the Defendant in response to the Plaintiff's request for production of documents.

14. Attached hereto as **Exhibit 1-L** is a true and correct copy of a memorandum that bears the date "7/25/94" and was issued to "Julie" from "Susan Schoenfeld." This document bears a exhibit sticker marked "12, 5-9-03" and was produced to the Plaintiff's counsel by a representative of Corporate Compensation in response to a subpoena *duces tecum* duly issued by an attorney with Jacobs Partners LLC.

15. Attached hereto as **Exhibit 1-M** is a copy of the transcript (relevant portions only, as referenced in the Plaintiff's Memorandum of Law) of the deposition of John Lane.

16. Attached hereto as **Exhibit 1-N** is a copy of the transcript (relevant portions only, as referenced in the Plaintiff's Memorandum of Law) of. the deposition of Susan Schoenfeld.

3

17. Attached hereto as **Exhibit 1-O** is a copy the transcript (relevant portions only, as referenced in the Plaintiff's Memorandum of Law) of the deposition of Tracey Shaw.

18. Attached hereto as **Exhibit 1-P** is a copy of Minn*esota Mutual Life Ins. Co. v. Ricciardello* (D. Conn. 1997) an unpublished District Court decision cited in the Plaintiff's Memorandum of Law.

*[signature]*
Gerry A. McMahon

Personally appeared the above-named Gerry A. McMahon and swore that the foregoing statements were true to the best of her knowledge and belief on the 17th day of February, 2004

*[signature]* Kirsten M Clements
~~Commissioner of the Superior Court~~
Notary Public

Kirsten M. Clements
NOTARY PUBLIC
State of Connecticut
My Commission Expires 3/31/08

4