UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------X
:
JOHN D. LANE, :
:
       Plaintiff, : Case No. 3:02CV1038 (AWT)
:
  -v- :
:
JEFFERSON PILOT FINANCIAL :
INSURANCE COMPANY, :
:
       Defendant. : March 9, 2004
------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

    The plaintiff, John D. Lane (alternatively "John Lane," "Lane" or the "Plaintiff") by his attorneys, JACOBS PARTNERS, LLC, hereby submits this Memorandum of Law and Points of Authority in Opposition to Defendant's Motion for [Partial] Summary Judgment (alternatively "Jefferson Pilot" or the "Defendant").

## I. BACKGROUND

**A. Preliminary Statement**

    The Defendant's entire Motion[1] is based on its contention and presumption that there is *no evidence* to support Plaintiff's CUTPA/CUIPA Count 6. In reality, the Court need look no further than Defendant's own Memorandum of Law to find that there exists a genuine issue of material fact as to whether Defendant engaged in unfair insurance and unfair trade practices under Connecticut law. Defendant is attempting to invade the fact finder's province by discounting, or dismissing entirely, the evidence it disclosed during formal discovery. Furthermore, Defendant incorrectly assumes that the only evidence that exists on the unfair trade/insurance practices issues is the discovery Defendant provided to Plaintiff.

    As of the date Plaintiff filed his complaint against Defendant, the federal courts'

---

[1] excluding sub-part d., which Plaintiff agrees to withdraw.

dockets disclosed 38 cases had been filed against Defendant (or its predecessor, Chubb LifeAmerica). A docket list Plaintiff filed as Exhibit 1 with his Memorandum in Opposition to Defendant's Motion for Protective Order in which Plaintiff prevailed, is attached hereto as Plaintiff's Exhibit 1. The information contained in the docket list, coupled with the manner in which Defendant handled Plaintiff's claim, established a good faith basis for Plaintiff's filing the CUTPA/CUIPA claims.

Under general agency principles, the knowledge of an attorney is imputed to the client. Veal v. Geraci, 23 F.3d 722, 725 (2d.Cir. 1994). Therefore, the knowledge of Plaintiff John Lane's counsel is imputed to Mr. Lane for purposes of determining his good faith basis for filing the CUTPA/CUIPA claims. Plaintiff will address no further Defendant's references to Plaintiff's lack of personal knowledge as it relates to the CUTPA/CUIPA claims.

Since the filing of Plaintiff's complaint, Defendant disclosed additional lawsuits filed against it. According to Defendant, fifteen (15) of those lawsuits included claims for unfair trade and/or insurance practices. Plaintiff John Lane's counsel has had discussions with Plaintiff's counsel in some of those cases. The affidavit of attorney Gerry McMahon, attached hereto as Plaintiff's Exhibit 2, more specifically sets forth the substance of those conversations. This information will be discussed in detail in another section of Plaintiff's memorandum.

## B. Defendant sought out Mr. Lane to apply for its disability insurance product and to subsequently endorse it for Defendant's benefit.

In 1994, the Plaintiff, John Lane, was a very successful retail securities broker and investment banker. He was also the Chairman of the Securities Industry Association ("SIA") Local Firms Committee. In about April or May of 1994, the Plaintiff began discussions with agents for Chubb LifeAmerica ("Chubb") about the possibility of the Plaintiff taking out a disability insurance policy from Chubb and endorsing Chubb's disability insurance product to other members of the SIA Local Firms Committee at an upcoming trade convention. The marketing materials provided to Plaintiff either by Defendant directly, or through its agent,

2

Corporate Compensation Plans, Inc. ("CCP") of Danbury, Connecticut, related to group disability insurance products. Working through Chubb's agent, CCP, the Plaintiff submitted the necessary paperwork to apply for Chubb's disability insurance policy. This paperwork included various disclosures regarding the Plaintiff's medical background. On October 28, 1994, Chubb issued a Disability Income Policy, designated as Policy number 009002259 (the "Policy") in which John Lane is the insured. *A true and accurate copy of the Policy is attached to the Affidavit of Attorney Gerry A. McMahon, Exhibit 1, A, of Plaintiff's Motion for Partial Summary Judgment* (Plaintiff's SJ Motion). Jefferson Pilot subsequently became the successor in interest to Chubb and is the current obligor under the Policy. (See Complaint, ¶6, and Answer, ¶6, Exhibit 1, B, Plaintiff's SJ Motion).

Pursuant to the terms of the Policy, including the "Own Occupation Rider", John Lane is entitled to receive a monthly disability insurance benefit for periods of total disability when, due to injuries or sickness, he is not able to perform the substantial and material duties of his occupation, and he is receiving care by a physician which is appropriate for the condition causing his disability. See Policy, Rider, Definition 1.4. The Plaintiff timely and fully paid the Defendant (or its predecessor, as the case may be) all of the required annual premiums for the Policy, and the Policy remains in full force and effect and has since it was first issued in 1994. See Complaint, ¶ 12; Answer, ¶12, *Exhibit 1, B, Plaintiff's SJ Motion.*

As a retail securities broker and investment banker, the Plaintiff was employed with various securities brokerage firms and/or investment banking firms. Throughout his career, the Plaintiff did not receive salary or draw from the securities brokerage firms that employed him. He was paid strictly on a commission basis from the revenue and fees generated by the business transactions that he successfully brought to completion.

Commencing some time during 1999, Plaintiff John Lane began to suffer the detrimental effects of mental depression. The Plaintiff's depression began to impact adversely on his ability to conduct his profession. Mr. Lane sought professional treatment for his condition, first from Dr. Bert Diament in 1999, and then later, as his condition deteriorated, from Dr.

3

Cyril Waynik in 2001. Since 2001 to the present, Mr. Lane continues under the medical care of Dr. Waynik. As a result of his depression, Mr. Lane's income declined drastically.

As a result of his illness, Plaintiff John Lane became disabled within the meaning of the Policy. On or about May 16, 2001, Mr. Lane contacted the Defendant and advised the Defendant that he intended to file a claim for disability benefits under the Policy. Thereafter, on or about May 25, 2001, Mr. Lane submitted a written claim for benefits under the Policy. The Defendant denied Mr. Lane's claim for disability benefits, and continued to deny such benefits notwithstanding repeated demands by the Plaintiff and his counsel. This civil action resulted.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, he may only discharge this burden by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case on which that party would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir.1994).

## III. PLAINTIFF'S CUTPA/CUIPA COUNT (SIXTH COUNT)

Plaintiff John Lane set forth in the Sixth Count of his Claim for Relief that the Defendant has engaged in unfair and deceptive acts and practices with such frequency as to indicate a general business practice, in violation of Connecticut's Unfair Insurance Practices Act (CUIPA) §38a-815 and that Defendant's acts and practices in violation of CUIPA also constitutes a violation of Connecticut's Unfair Trade Practices Act (CUTPA)

4

§38a-816. (Plaintiff's Complaint, Sixth Claim for Relief, ¶¶58-62.)

Plaintiff will address Defendant's misrepresentations and false advertising of its disability policy and then Defendant's unfair settlement practices. Upon further review of the CUTPA and CUIPA statutes, Plaintiff will withdraw its Fifth Claim for Relief to the extent that it is redundant with the Sixth Claim for Relief.

## IV. LAW AND ARGUMENT

### A. The Defendant Failed to Meet Its Burden of Demonstrating the Absence of a Genuine Issue of Material Fact as to Plaintiff's Claim for False Advertising.

The Defendant asserts that it is entitled to summary judgment with respect to the allegation set forth in subparagraph (a) of the Plaintiff's CUTPA/CUIPA cause of action (see Complaint, ¶59, subparagraph (a)). Lane's allegation in this subparagraph is for misrepresentation and false advertising, pursuant to §38a-816 (1). The Defendant baldly asserts that Lane is required to prove misrepresentation and bad intent by the Defendant in dishonoring its contractual obligations to pay benefits to disability policyholders in general. There is no support for the Defendant's position in the text of the statute. Nor is it consistent with established case law that holds that a single incident of misrepresentation or false advertising is sufficient to state a claim under §38a-816 (1). See Tucci v. CGU Ins. Co., 2000 WL 1835371, *3 (Conn.Super. 2000) (internal citations omitted); Holleran v. Nationwide Ins. Co., 1997 WL 576509, *1 (Conn.Super. 1997) (internal citations omitted); Sygiel v. Clifford, Ban & Loos, Ins. Agency, Inc., 1995 WL 462278, *3 (Conn.Super. 1995) (internal citations omitted). That the Plaintiff included references to multiple policies does not change the gravamen of the allegation, to wit: that the advertising and promotional materials provided to the Plaintiff misrepresented the benefits, advantages, conditions or terms of the Policy. There is sufficient evidence to support the Plaintiff's claim that the Defendant has violated §38a-816(1).

In 1994, when the Plaintiff applied for the Policy, he was given a pamphlet entitled: "The Securities Industry Association Individual Disability Income Plan" (the "SIA Pamphlet"). A true and accurate copy of the SIA Pamphlet is attached hereto as Exhibit 3.

5

(See McMahon Affidavit, ¶10). Page 7 of the SIA Pamphlet contains the following heading: "Features and Benefits of the New SIA Plan To You, as a Plan Participant." Under this heading on page 7 are nine separate bullet-point statements, including: "You are **completely** covered for any disability caused by mental or nervous conditions" (emphasis as in original).

The Plaintiff was also provided with another pamphlet entitled "The Individual Income Disability Plan; Your Plan Information; Mr. John Lane; Nutmeg Securities, Ltd." (the "IDIP Pamphlet"). A true and accurate copy of the IDIP Pamphlet is attached hereto as Exhibit 4. (See McMahon Affidavit, ¶ 11). At page 5 of the IDIP Pamphlet, the Defendant elaborates on the "own occupation" nature of the Plaintiff's policy:

> Your policy contains a special feature that is designed to protect you against an accident or illness which causes a loss of your earnings while you continue to work in your occupation - even if you have completely recovered from your disability. The benefit will be proportionate to your loss of income and can be payable to age 65.

The Plaintiff was also provided with a pamphlet entitled "Trilogy Personal Income Specimen Policy" (the "Specimen") at the time he applied for the Policy. A copy of the Specimen is attached as Exhibit 5. (See McMahon Affidavit, ¶ 12). Depicted on page 8 of the Specimen is Part 1 of the Defendant's standard disability income policy which includes the definition of "total disability or totally disabled." Printed in the margin next to this provision is the following comment: "[a] realistic definition. It is your choice whether or not to work in another occupation. The Own Occupation Rider liberalizes this definition."

Taken together, these advertising materials would have lead any reasonable person considering the purchase of the Defendant's disability insurance product, to conclude that the determinative factor of the insured's entitlement to benefits for disability arising from a mental condition is the extent to which the illness resulted in <u>lost earnings</u>. There is nothing in this advertising material which would alert a prospective purchaser of the Defendant's disability insurance policies that the Defendant would not pay disability benefits for a mental illness where the insured is physically is able to go to work and

perform basic functions, regardless whether the illness results in an actual loss of the insured's income.[2]   In this case the Defendant has asserted that the Plaintiff is not entitled to benefits because he <u>worked</u> during his disability, notwithstanding evidence that the Plaintiff's mental condition has made his work efforts entirely ineffective that that his income dropped precipitously as a result.  On February 20, 2002, the Defendant, by Terry Ross, Disability Claims Examiner, wrote to Plaintiff's counsel in response to a demand letter issued by counsel, to substantiate the Defendant's denial of the Plaintiff's claim for disability benefits.  A true and accurate copy of Ms. Ross's letter is attached hereto as Exhibit 6 (See McMahon Affidavit, ¶ 13).  Ms Ross stated in her letter as follows:

> The information contained in Mr. Lanes' claim file indicates that he worked approximately 42.5 hours per week prior to disability. His employer indicates that he currently works 35-45 hours per week. Therefore, we have no evidence of loss of time. Mr. Lane further indicates that he is performing all the duties of his position, although less efficiently. In addition, his employer indicates that he is working full time doing all the duties of his position. We do not believe there is any evidence of loss of important duties of his occupation.

The Defendant's focus on the hours and time worked by Lane while under disability, and the tasks performed, without regard to the impact of Lane's mental disability on his earnings, is inconsistent with the statements provided in the advertising materials as well as the policy. Furthermore, it is inconsistent with Lane's reasonable expectations of coverage arising from the advertising materials. The Defendant's determination of the Plaintiff's "disability" is hardly *realistic* as advertised in the Specimen. Given the Defendant's determination to deny the Plaintiff's claim for benefits, it is difficult to see how the Plaintiff is *completely* covered for any disability caused by mental or nervous conditions as advertised in the SIA Pamphlet.  The Defendant does not appear to agree that the Plaintiff is ***protected from illness which causes loss of his earnings while he continues to work in his occupation*** as advertised in the IDIP Pamphlet. The Plaintiff submits that there is sufficient evidence supporting the Plaintiff's claim under §38a-816 (1)

---

[2] There is no genuine dispute that the Plaintiff, throughout his entire career, earned income based upon commissions and fees for completed transactions, and never earned a salary or received a draw.  The Defendant cannot now assert that it was not fully aware at the time it underwrote and issued the Policy of the manner in which the Plaintiff derived his income.

7

to demonstrate that there is a genuine issue of material fact and that the Defendant is not entitled to summary judgment.[3]

In further support of its motion for summary judgment on this claim, the Defendant points to the reference in the Complaint to *group* disability policies. The Defendant asserts that because the Policy in issue is an *individual* policy, and not a *group* policy, the Plaintiff cannot establish his claim under §38a-816 (1). Defendant's Memorandum at Page 14. First, application of the statute is not in any way restricted to *group* insurance policies. Second, it appears that the promotional materials provided to Lane, particularly the SIA Pamphlet, were in fact targeted to employers who may wish to offer this form of coverage on a group basis to their employees, to supplement existing group long-term disability plans. See SIA Pamphlet generally, Exhibit 3. Regardless, the unmistakable basis of the Plaintiff's allegation is that the Defendant misrepresented the benefits, advantages, conditions or terms of the Policy.

### B. The Defendant Failed to Meet Its Burden of Demonstrating the Absence of a Genuine Issue of Material Fact as to Plaintiff's Claim for Unfair Settlement Practices.

The Defendant failed to meet its burden of demonstrating the absence of a genuine issue of material fact. As set forth in Section II, the Defendant may only discharge this burden by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case on which that party would have the burden of proof at trial.

Ironically, the Defendant's Memorandum of Law includes references to some of the evidence that supports Plaintiff's CUTPA/CUIPA claim. That evidence includes:

- 17 lawsuits filed against Defendant claiming unfair trade and/or insurance practices (Defendant's Memorandum of Law, p. 9);
- 7 additional lawsuits against Defendant (Defendant's Memorandum of Law, p. 9, Footnote 7).
- Defendant's denial, in whole or in part, of 45 claims it received for benefits based

---

[3] Besides the hours worked by the Plaintiff, the Defendant has asserted other various reasons to justify its denial of benefits to the Plaintiff, any of which may be regarded as inconsistent with the advertising materials.

8

upon allegations of mental, emotional, psychological and/or psychiatric disability (Defendant's Affidavit, ¶8);

Mr. Lane's counsel, Gerry McMahon, spoke with Plaintiff's counsel in some of those cases. The Plaintiffs include several professionals: 6 doctors, 1 dentist, 1 business consultant, and 1 financial planner. Because of confidentiality agreements between the Defendant and the Plaintiff's, Mr. Lane's counsel could not discover the amount of the settlements. However, Plaintiff's counsel in several of those cases provided attorney McMahon with factual information regarding the bases for their Plaintiff's claim(s) against Defendant and the bases for their lawsuit against Defendant. The specifics of those conversations are set forth in Attorney McMahon's Affidavit, Exhibit 2. The information attorney McMahon learned from the other Plaintiffs' counsel includes Defendant's denial of an insured's claim after the insured rejected a lump sum pay out (¶5), Defendant's failure to notify an insured of his right to continued coverage repeatedly requesting the same information from a claimant (¶6), sending out private investigators unannounced and at inappropriate times (¶7), using false pretenses to convince claimants spouse to speak with insurer and/or insurer's investigator (¶7), and unfounded denial of benefits (¶8).

Because the Defendant has failed to meet its burden of demonstrating the absence of a genuine issue of material fact, its Motion must fail. Assuming, for the sake of argument, that the Defendant met its burden, Defendant's Motion still fails as Plaintiff can meet the minimum requirement for a claim of unfair settlement practices to survive summary judgment.

Claims under §38a-816(6) "require a showing of more than a single act of insurance misconduct," Mead v. Burns, 199 Conn. 651, 659 (1986), Lees v. Middlesex Insurance Co., 229 Conn. 842, 848, 849 (1994). Rivera v. Allstate Insurance Co., 14 Conn.L.Rptr. 350 (1995). Plaintiff John Lane is able to show that there is a genuine issue of material fact as to whether there is evidence of more than a single act of insurance misconduct.[4]

---

[4] Actually, where a plaintiff asserts a claim under another provision of C.G.S. §38a-816 in addition to unfair claim settlement practices under subparagraph (6), then the plaintiff need not allege or prove multiple acts of insurance misconduct to sustain a CUTPA/CUIPA claim. King v. Ehorn, 1993 WL 489649, *2 (Conn.Super., 1993) (holding that where a plaintiff asserts claims under both §§ 38a-816(1) and 38a-816(6),

9

Defendant's analysis assumes, without any legal authority, that (1) the Plaintiff must have **personal** knowledge of insurance misconduct that occurred to others and (2) evidence of unfair claim settlement practices is limited to a court "finding" or "judgment." Defendant has failed to set forth any legal support for these propositions and Plaintiff has discovered no case law setting forth such a requirement.

The fact finder should be given the opportunity to review the following evidence and to make a factual determination as to whether Defendant has engaged in unfair and deceptive acts and practices with such frequency as to indicate a general business practice:

- The number of lawsuits filed against Defendant
- The allegations set forth in the lawsuits filed against Defendant
- The testimony of the Plaintiffs in other actions against Defendant
- The disposition of the lawsuits filed against Defendant

## C. **Plaintiff consents to withdraw his stand alone CUTPA claim, Fifth Claim for Relief**

Finally, the Defendant seeks summary judgment with respect to the Plaintiff's stand-alone CUTPA cause of action, set forth in the Fifth Claim for Relief in the Complaint. Upon careful review of the most recent and relevant case authorities, the Plaintiff and his counsel have concluded that the stand-alone CUTPA claim is redundant of the cause of action stated under CUTPA/CUIPA, set forth in the Sixth Claim for Relief. Accordingly, the Plaintiff hereby withdraws the CUTPA claim set forth in the Fifth Claim for Relief.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests this Honorable Court to Deny Defendant's Motion for Summary Judgment on the Sixth Claim for Relief.

---

the plaintiff need not allege multiple acts or a general business practice despite the fact that a claim under § 38a-816(6), by itself, would require allegations of a general business practice); Holleran v. Nationwide Ins. Co.; 1997 WL 576509, *1 (Conn.Super. 1997). Here, the Plaintiff has also asserted a claim of misleading and false advertising under C.G.S.§38a-816(1), and, therefore, need not prove multiple acts to sustain his CUTPA/CUIPA claim against the Defendant.

Dated: Norwalk, Connecticut
      March 9, 2004

                                        The Plaintiff,
                                        JOHN D. LANE

                                        By their attorneys,
                                        JACOBS PARTNERS LLC

                                        */s/ Robert M. Fleischer*
                                        Gerry A. McMahon (CT24881)
                                        Robert M. Fleischer (CT11960)
                                        Mark R. Jacobs (CT12255)
                                        Merritt View
                                        383 Main Avenue
                                        Norwalk, CT 06851
                                        Tel: (203) 846-6622

## CERTIFICATION

      This is to certify that a copy of the foregoing was sent, via facsimile and via first class mail, postage paid, on the 9th day of March 2004, upon the following:

Pamela Levin Cameron, Esq.
Lewis K. Wise, Esq.
David J. Heinlein, Esq.
Elizabeth J. Robbin, Esq.
Rogin, Nassau, Caplan,
      Lassman & Hirtle, LLC
City Place I, 185 Asylum Street
Hartford, CT 06103-3460

                                              Robert M. Fleischer