UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

-----------------------------------------------------------X
                                                    :
JOHN D. LANE,                                       :        2004 MAR 23  P 3: 44
                                                    :
            Plaintiff,                              :   Case No.  3:02CV1038 (AWT)
                                                    :        U.S. DISTRICT COURT
      -v-                                           :
                                                    :
JEFFERSON PILOT FINANCIAL                           :
INSURANCE COMPANY,                                  :
                                                    :
            Defendant.                              :        March 23, 2004
-----------------------------------------------------------X


**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT**

       The plaintiff, John D. Lane (alternatively "John Lane," "Lane" or the "Plaintiff") by

his attorneys, JACOBS PARTNERS, LLC, hereby submits this Reply Memorandum in

further Support of Plaintiff's Motion for Partial Summary Judgment against the defendant,

Jefferson Pilot Financial Insurance Company (alternatively "Jefferson Pilot" or the

"Defendant").

## I. PRELIMINARY STATEMENT

       The issue before this Court is whether the Second and Third Affirmative Defenses are

barred as a matter of law under the terms of the disability insurance policy in issue.[1] The

Affirmative Defenses are:

Second Affirmative Defense:  *There is no coverage under the policy for depression because
Mr. Lane made a false statement on his application for disability benefits.*

Third Affirmative Defense:  *There is no coverage under the policy for depression because
Mr. Lane made a material misrepresentation on his application for disability benefits.*

---

[1] Defendant withdrew its Fourth and Fifth Affirmative defenses.

## II. LAW AND ARGUMENT

### A. Standard for Summary Judgment

Insofar as the Defendant's Affirmative Defenses are based upon misrepresentation, the burden of proof on the Affirmative Defenses is squarely upon the Defendant. See Variety Homes, Inc. v. Postal Life Insurance Company, 287 F. 2d 320, 321 (2d Cir. 1961) (finding that defendant/insurer bares burden of proof on affirmative defense that plaintiff/insured made material misrepresentations when he applied for policy in issue). Defendant, Jefferson Pilot, has the burden of coming forward with specific facts showing that there is a genuine issue for trial by a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party and grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. See Knight v. United States Fire Ins. Co., 804 F.2d 9, 12-15 (2d Cir.1986), cert. denied, 480 U.S. 932 (1987); Argus Inc. v. Eastman Kodak Co., 801 F.2d 38, 45 (2d Cir.1986), cert. denied, 479 U.S. 1088 (1987). The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### 1. Elevated Standard of Proof for Fraud Claims: Clear and Satisfactory Evidence

The Affirmative Defenses are based upon an alleged fraud/ misrepresentation; therefore, the Defendant must establish all of the elements of fraud/misrepresentation by the heightened standard of "clear and satisfactory evidence" in order to succeed on the Affirmative Defenses.[2] The elements of fraud are (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by party making it; (3) that it was made to induce other party to act on it; and (4) that latter did so act on it to his detriment. Billington v. Billington, 220 Conn. 212, 217(1991).

---

[2] Johnson v. Chesebrough-Pond's USA Co., 918 F.Supp. 543 (D.Conn. 1996) (citing Kilduff v. Adams, Inc. 219, Conn. 314, 330 (1991) in order to succeed at trial.

2

**2. Court Must Apply Elevated Standard of Proof on Summary Judgment Motion**

When considering a motion for summary judgment challenging a claim based on fraud

or misrepresentation, the Court's assessment of the evidence and determination whether

there is a genuine issue of material fact should be made in light of the heightened

evidentiary standard.[3]

By this motion for partial summary judgment, John Lane seeks dismissal of the

Second and Third Affirmative Defenses (collectively the "Affirmative Defenses") both of

which relate to the Defendant's contention that John Lane, when he applied in 1994 for the

disability insurance policy in issue, failed to disclose a prior incident of depression.

This motion addresses the following issues: (1) is there a genuine issue of fact

whether John Lane failed, when he applied for the disability policy in issue, to disclose a prior

incident of depression; and (2) the relevant facts concerning John Lane's disclosures in

connection with his application for the Policy are not subject to genuine dispute and establish,

as a matter of law, that the Plaintiff made full disclosure to the Defendant when he applied for

the disability policy.

The terms of the disability policy are clear and unambiguous, and bar the Affirmative

Defenses entirely. Accordingly, John Lane is entitled to partial summary judgment dismissing

the Affirmative Defenses entirely.

**B. The Affirmative Defenses Fail Because the Time Limit on All Defenses Except for
Nonpayment of Premium Expired On October 28, 1996, Two Years from the Issue
Date of the Policy**

The Policy contains an incontestability provision in Part 7, subpart 7.2, which provides as

follows:

> **7.2 Time Limit on Certain Defenses**
> This policy shall be incontestable, except for nonpayment of premium, after it
> has been in force for two years from its Issue Date.

There has been no contention by the Defendant that John Lane failed to timely pay

premiums for the Policy.  Once the incontestability period runs, the insurer cannot contest

---

[3] See U.S. v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborough, Conn., 897 F.2d
87, 101 (D.Conn. 1990) (observing that summary judgment necessarily implicates the substantive evidentiary
standard of proof that would apply at trial on the merits).

3

the policy, whether by a claim of breach of contract, fraud, misrepresentation, or breach of the covenant of good faith and fair dealing. Minnesota Mut. Life Ins. Co. v. Ricciardello, 1997 WL 631027, *2-4 (D.Conn.1997), (citing Manzella v. Indianapolis Life Ins. Co., 814 F.Supp. 428, 432 (E.D.Pa.1993)).[4] In this case, the contestability period under the Policy has run and, therefore, the Affirmative Defenses are barred under section 7.2 of the Policy.

## C. It is UNDISPUTED that John Lane Disclosed His 1983/84 Depression to Defendant Through Its Agent

IT IS UNDISPUTED that, on May 24, 1994, John Lane disclosed the 1983/84 depression to Defendant, through its agent, CCP. (Defendant's Memorandum in Opposition, p. 5[5]; Exhibit H, Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment) On that form, Mr. Lane circled the word "depression" and wrote in the margin "1983/4 diagno[] (move fm.Col".

John Lane also disclosed the 1983/84 incident related to his move from Colorado by, as approved by Defendant's vice-president of underwriting, Susan Schoenfeld, providing Defendant with the National Life of Vermont application. (Exhibit K of Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment) The question to which Mr. Lane answered "Yes" asked:

> "Have you ever had, been told you had, or been treated for, 2. j. "mental illness, anxiety, depression or any psychological or emotional condition or disorder?"

Mr. Lane also provided the time frame "1983" and, in layman's terms, stated the reason as "anxiety due to relocation and job change".

---

[4] Defendant cited several cases in an attempt to get around the Incontestability clause; however, the cases are inapplicable here because the courts were applying incontestability clause statutes of states other than Connecticut and none of the statutes cited are verbatim to Connecticut's statute. The cases which must be disregarded are PaulRevere Life Ins. Co. v. Haas, 137 N.J. 190, 198 (N.J. 1994)(New Jersey state statute); Keaton v. Paul Revere Life Ins. Co., 648 F.2d 299 (5th Cir.Unit B 1981)(Georgia state statute); Massachusetts Casualty Ins. Co. v. Forman, 516 F.2d 425 (5th Cir.), 424 U.S. 914, (1976)(Florida state statute); Home Life Ins. Co. v. Regueira, 313 So.2d 438 (Florida state statute AND issue was specific to group policies and distinct from individual policies); Carlson v. New York Life Ins. Co., 76 Ill.App.2d 187 (1966)(language of incontestability clause not set forth in case and no mention of state statute). Furthermore, the foregoing cases and the two following cases, all cited by Defendant in its Memorandum of Law are not controlling on this Court. Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449 (1930); Minnesota Mutual Life Ins. Co. v. Morse, 487 S.W.2d 317 (1972).

[5] "Jefferson Pilot Financial does not dispute that Lane informed CCP of his 1983-84 depression in his trial application, and that CCP was its agent."

Taken together, these facts demonstrate that there is no genuine issue of fact that John Lane disclosed his 1984 episode of depression to the Defendant, through Defendant's authorized agent, when he applied for the Policy in 1994. Accordingly, the Affirmative Defenses must fail as a matter of law.

## D. There is No Evidence to Support a Duty on Mr. Lane to Disclose Marital Counseling to Defendant

For the first time since June 2001 when Defendant learned of the dates that Mr. Lane participated in marital counseling sessions with psychologist, Bert Diament, Defendant now attempts to use this information to avoid coverage. It is a red herring.

Defendant chose not to obtain additional information regarding the 1986-87 sessions when Dr. Diament offered to answer any questions in 2001.

Defendant chose not to depose Dr. Diament (or any of Mr. Lane's treaters, for that matter) during discovery. Defendant merely conducted a records deposition at which it had Dr. Diament read his records to the court reporter. The records deposition testimony, attached to Defendant's Memorandum in Opposition as Exhibit D, clarifies that Dr. Diament met with John and Susan Lane together in the 1986-87 session.[6] There is NO EVIDENCE that Mr. Lane saw Dr. Diament for "stress, anxiety, or depression" in 1986-87. There is NO DSM (diagnostic code) in evidence from Dr. Diament to include a "stress, anxiety, or depression" diagnosis. There is NO EVIDENCE that Dr. Diament diagnosed Mr. Lane with "stress, anxiety, or depression" in 1986-87.

Defendant's claim that "it is likely that Dr. Diament's assessment would have included at least a diagnosis of "stress" is WHOLLY UNSUPPORTED by the evidence. The Defendant had ample opportunity to depose Dr. Diament to gather information regarding the sessions in 1986-87 but it chose not to.

## E. The Affirmative Defenses are Barred by the Express Terms of the Policy

Even assuming, *arguendo*, that John Lane failed to disclose his 1986-87 marital counseling when he is applied for the Policy in 1994, the Defendant is nonetheless barred

---

[6] Q. So pages 1 to 52 would be when you saw John and Susan together? A. Exactly. Q. Which was sometime in the late '80s? A. Right….

from denying benefits to the Plaintiff based upon such alleged failure. The Policy contains

an express provision in Part 4 that recites precisely how the Defendant is to deal with a

Policy claim for a pre-existing condition:

> **Part 4**
> **PRE-EXISTING CONDITIONS**
> **LIMITATIONS**
> We will not pay benefits for a Pre-Existing Condition. Pre-Existing Condition
> means a mental or physical condition:
> a.  which was materially misrepresented or not disclosed in your application;
>     and
> b.  for which you received  a Physician's advise or treatment during the 5
>     years prior to the Issue Date; or
> c.  which caused symptoms during the 5 years prior to the Issue Date for
>     which an ordinarily prudent person would seek medical attention.
>
> No claim for loss incurred or disability that starts after two (2) years from the
> Issue Date of the policy will be reduced or denied on the ground that a mental
> or physical condition not excluded by name or specific description had existed
> during the five years before the Issue Date of the Policy.

First, the marital counseling ended in March 1987. (Exhibit B of Defendant's

Memorandum in Opposition).  Therefore, it occurred over 7 years before the Plaintiff even

applied for the Policy.  The Defendant can recite no evidence, which can demonstrate that

the Plaintiff was suffering from any "anxiety, stress, or depression" in 1989 or any time

within five years prior to the Issue Date.  Consequently, like the 1984 incident, the 1986-

1987 marital counseling fails to meet the definition of "Pre-Existing Condition" expressly

stated in Part 4 of the Policy.

Second, the Plaintiff's current depression did not begin until some time during 1999,

nearly four years after the Policy Issue Date.[7]  Further, the Plaintiff seeks recovery of

disability benefits commencing in April 2000. See Complaint, ¶¶ 35-37.  Insofar as

subparagraph *a.* of the first paragraph of Part 4 of the Policy refers to conditions that were

*materially misrepresented*, (e.g. fraudulent misrepresentation) and the second paragraph

makes no exception for conditions that were *materially misrepresented*, then the second

---

[7] Given the nature of this illness, it is difficult to determine the precise date of the onset. However, the
Plaintiff believes that it began some time during 1999. Complaint, ¶ 19, Exhibit 1-B.  The Plaintiff first
began treatment for his depression in 1999, Complaint, ¶ 21, Exhibit 1-B.

paragraph must be read to apply to all pre-existing conditions, regardless whether the policy holder's failure to disclose was inadvertent or intentional. The Affirmative Defenses, therefore are all barred under the second paragraph of Part 4 of the Policy.

At the eleventh hour, the Defendant is grasping at anything in its attempt to avoid its contractual responsibility to John Lane.

### III. CONCLUSION

As explained above, there is not sufficient evidence supporting the Affirmative Defenses for a jury to return a verdict in favor of the Defendant, and the Affirmative Defenses, therefore, fail as a matter of law. The Plaintiff respectfully request that the Court grant the Plaintiff's Motion for Partial Summary Judgment and dismiss the Defendant's Second and Third Affirmative Defenses.

The Plaintiff,
JOHN D. LANE

By their attorneys,
JACOBS PARTNERS LLC

Gerry A. McMahon (CT24881)
Robert M. Fleischer (CT11960)
Mark R. Jacobs (CT12255)
Merritt View
383 Main Avenue
Norwalk, CT 06851
Tel: (203) 846-6622

## **CERTIFICATION**

        This is to certify that a copy of the foregoing was sent, via facsimile and via first class mail, postage paid, on the 23rd day of March, 2004, upon the following:

Pamela Levin Cameron, Esq.
Lewis K. Wise, Esq.
David J. Heinlein, Esq.
Elizabeth J. Robbin, Esq.
Rogin, Nassau, Caplan,
        Lassman & Hirtle, LLC
City Place I, 185 Asylum Street
Hartford, CT 06103-3460

_____
Gerry A. McMahon