```
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-----------------------------------------------------------------X
                                                                 :
JOHN D. LANE,                                                    :
                                                                 :
            Plaintiff,                                           :  Case No.  3:02CV1038 (AWT)
                                                                 :
   -against-                                                     :
                                                                 :
JEFFERSON PILOT FINANCIAL                                        :
INSURANCE COMPANY,                                               :
                                                                 :
            Defendant.                                           :  February 12, 2007
-----------------------------------------------------------------X
```

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION IN LIMINE

The Plaintiff, John D. Lane (the "Plaintiff"), by his undersigned attorneys, hereby submits this memorandum in opposition to the Defendant's Motion In Limine (the "Motion") filed January 22, 2007 (*Doc. No.* 96). For the reasons set forth below, the Motion should be denied.

### I. BACKGROUND

1.    The Plaintiff commenced this action on June 17, 2002 in order to recover damages and other relief against the defendant, Jefferson Pilot Financial Insurance Company (the "Defendant"), in connection with the Defendant's prior and continuing failure to pay benefits under a disability income insurance policy (the "Policy") purchased by the Plaintiff from the Defendant's predecessor-in-interest, Chubb Insurance Group, in 1994.

2.    On August 14, 2002, the Defendant filed its answer to the Plaintiff's complaint. That answer contained just one affirmative defense: that "the Plaintiff's complaint fails to state a claim for which relief can be granted." On April 2, 2003, the Defendant filed an amended answer and affirmative defenses (the "Amended Answer"), wherein the Defendant added four additional affirmative defenses. All of the additional affirmative defenses related to the

2

Defendant's accusation that the Plaintiff intentionally made false representations of material facts in connection with his application for the Policy in 1994. Specifically, the Defendant claimed that the Plaintiff failed to disclose a prior incident of depression.

      3.     The Plaintiff vehemently disputed the Defendant's accusation because the Defendant had no basis to allege that he misrepresented any facts in connection with his application for the Policy. On May 23, 2003, the Plaintiff's attorney, Robert M. Fleischer, sent a letter to Defendant's attorney demanding, pursuant to Fed. R. Civ. P. 11, that the Defendant withdraw the four additional affirmative defenses.[1] In response to Plaintiff's Rule 11 demand, Defendant's attorney informed Plaintiff's attorney, by letter dated May 30, 2003, that the Defendant was not yet prepared to withdraw the affirmative defenses.

      4.     As a direct consequence of the Defendant's failure and refusal to withdraw its baseless affirmative defenses, on February 17, 2004, the Plaintiff was compelled to file a Motion For Partial Summary Judgment (*Doc. No.* 72) together with a supporting Memorandum of Law (*Doc. No.* 74). By that motion, the Plaintiff sought judgment as to each of the four additional affirmative defenses asserted in the Amended Answer (i.e. the Second, Third, Fourth and Fifth Affirmative Defenses). In its memorandum opposing summary judgment (*Doc. No.* 77), the Defendant indicated that it would withdraw the Fourth and Fifth Affirmative Defenses, but not the Second and Third. On August 30, 2006, the Court entered an Order (*Doc. No.* 88) wherein the Court acknowledged the Defendant's withdrawal of the Fourth and Fifth Affirmative

---

[1]. Based upon the evidence adduced during discovery, Plaintiff believes that there can be no colorable dispute that the Plaintiff disclosed, in writing, his prior incident of depression. The Plaintiff believes that the Defendant's inflammatory allegations lacked basis in fact and should have been withdrawn regardless of the "incontestability clause" in the Policy, but the Defendant refused to do so (except with respect to the fourth and fifth affirmative defenses, which Defendant agreed to dismiss only after the Plaintiff filed his motion for partial summary judgment). The Court, in its Order granting the Plaintiff's motion for partial summary judgment, limited the basis for its ruling to the "incontestability clause" in the Policy. Consequently, the issue of whether the Defendant had any good faith basis to accuse the Plaintiff of fraud and misrepresentation remains unresolved.

Defenses and granted judgment in favor of the Plaintiff with respect to the Second and Third Affirmative Defenses.

5.    The Plaintiff's complaint originally contained four separate claims for relief: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) CUTPA (Connecticut Unfair Trade Practices Act) and (4) CUTPA/CUIPA (Connecticut Unfair Insurance Practices Act).  Also on August 30, 2006, the Court entered an Order granting the Defendant's motion for summary judgment as to the Plaintiff's CUTPA and CUTPA/CUIPA claims.  As the Court noted in that Order, the Plaintiff's remaining claims are his breach of contract claim (First Claim for Relief) and his claim for breach of the implied covenant of good faith and fair dealing (Second Claim for Relief).

6.    On January 22, 2006, the parties filed their Joint Trial Memorandum (*Doc. No. 97*).  The Joint Trial Memorandum contained a statement that the Defendant would be filing the instant Motion.

7.    The Court has not scheduled a specific date for the trial of this case to commence.

## **II. ARGUMENT**

8.    By its Motion, the Defendant seeks entry of an Order precluding the Plaintiff from introducing any evidence or making any argument to the jury (1) relating to the application or underwriting processes for the Policy; and (2) that the Defendant acted in bad faith in raising affirmative defenses in this lawsuit based on the Plaintiff's failure to disclose in his application for the Policy his prior diagnosis or treatment for depression.  Defendant claims that these matters should be precluded because they are irrelevant.  In addition, Defendant further argues that evidence concerning the affirmative defenses should be excluded pursuant to Fed. R. Evid. 403 on the grounds that such evidence is unfairly prejudicial.

9.    As explained below, evidence concerning the application and underwriting process

4

is relevant and should not be precluded. Furthermore, evidence concerning the Defendant's accusation of fraud and misrepresentation against the Plaintiff is relevant and not unfairly prejudicial.

A. <u>**Evidence Relating To The Application And Underwriting Process Is Admissible.**</u>

10.     Defendant argues that evidence relating to the application and underwriting process is irrelevant because the parties have stipulated that the Policy was valid and in force at the time Plaintiff made his claim for disability benefits. <u>See</u> Motion, p. 2. While the parties have so stipulated, the Plaintiff disagrees that evidence concerning the application and underwriting process is irrelevant.

11.     In this litigation, the Defendant contends that the Plaintiff fails to meet the requirements of "disabled," which, under the Policy, means that the Plaintiff cannot perform the "substantial and material duties of [his] occupation." The Defendant contends that the Plaintiff was able to perform the substantial and material duties of his occupation, that he did in fact perform those duties, and he is therefore not "disabled" within the meaning of the Policy. In this regard, the Defendant focuses almost exclusively on the amount of time that the Plaintiff spent at his office "working" and gives little or no regard to the Plaintiff's actual productivity, success or earnings.

12.     Plaintiff, however, contends that the number of hours he worked at his office is not determinative of the question of his disability because Plaintiff was only compensated based upon the transactions that he successfully completed. The substantial and material duties of the Plaintiff's occupation are set forth in the application for the Policy. The Defendant was on express and actual notice of these duties. How the Defendant determined to issue the Policy, that is, the application and underwriting process, are therefore at the very heart of this case. Whether

5

the Plaintiff went into his office and tried to work, and the amount of time he spent at his office, are irrelevant to the question whether he is "disabled" within the meaning of the Policy. The Plaintiff will testify at trial that, throughout his career, and long before he obtained the Policy in 1994, he was always compensated based upon his actual performance, and upon the business transactions actually completed. He will testify that he did not receive any straight salary, and that he did not get paid simply for "showing up" at the office. He will testify that he disclosed to the Defendant during the underwriting process the manner in which he was compensated, and the substantial and material duties he needed to perform in order to succeed and earn compensation.

13.  Evidence concerning the underwriting process, which Defendant seeks to exclude, will demonstrate that the Defendant well understood, at the time it underwrote and issued the Policy, the manner in which the Plaintiff earned compensation, and the various functions he needed to perform in order to earn such compensation. This is directly relevant to the jury's understanding of the parties' reasonable expectations as to what circumstances would qualify as a disability within the meaning of the Policy.[2] Accordingly, evidence concerning the application and underwriting process should not be precluded.

**B.  Evidence Relating To Defendant's Affirmative Defenses Is Admissible.**

*1. Evidence Of The Defendant's Affirmative Defenses Is Relevant*

14.  The Defendant asserts that evidence of its failed affirmative defenses, by which the Defendant, in an attempt to avoid liability to the Plaintiff, accused the Plaintiff of intentionally failing to disclose material information (i.e. a prior episode of depression) to the Defendant in connection with Plaintiff's application for the Policy, is irrelevant and not admissible. It argues that it had a right to raise the affirmative defenses, and that the Plaintiff

---

[2] While the Plaintiff believes that the provisions of the Policy are clear with respect to definition of the term "disabled," the parties are nonetheless at odds with respect to their respective interpretations of that provision of the Policy. Consequently, extrinsic evidence concerning the application and underwriting process will be probative of this issue.

should not have the opportunity to argue during trial that the Defendant, by raising the affirmative defenses, acted in bad faith. See Motion, p. 3. The Plaintiff disagrees.

15.     The Plaintiff has researched but not uncovered any Connecticut or Second Circuit case authority directly addressing this issue. However, decisions from other jurisdictions do offer some guidance. In White v. Western Title Insurance Co., 40 Cal.3d 870, 710 P.2d 309 (1985), the California Supreme Court held that evidence concerning post-litigation settlement offers were admissible at trial against the defendant title insurance company to prove the defendant's bad faith, though not to prove liability. The *White* court recognized that the contractual relationship between insurer and the insured does not terminate with commencement of the litigation. Id. at 317. Further, the *White* court reasoned that drawing a sharp distinction between conduct before and after suit was filed would be undesirable because it would "encourage insurers to induce the early filing of suits to delay serious investigation and negotiation until after suit was filed when its conduct would be unencumbered by any duty to deal fairly and in good faith." Id. at 317.

16.     In this case, the Policy continued in full force and effect even after the Plaintiff commenced this litigation in 2002 and is in effect today. Indeed, the Defendant continued to issue annual premium bills to the Plaintiff subsequent to the commencement of this case. Accordingly, there can be no dispute that the Defendant continued to owe the Plaintiff a duty of good faith and fair dealing after the Plaintiff commenced this litigation and at the time Defendant asserted the affirmative defenses and accused the Plaintiff of fraud and misrepresentation.

17.     Furthermore, the Policy was issued more than seven years prior to Plaintiff's commencement of this action. During that period, the Defendant gladly accepted nearly $46,000 in Policy premiums from the Plaintiff, never accused him of fraud or misrepresentation, and never attempted to cancel the Policy for any reason. Only after the Plaintiff commenced this suit

did the Defendant apparently review the entire application and underwriting process in an attempt to find some additional basis to deny the Plaintiff's claim for benefits. Thus, the Defendant's assertion of the affirmative defenses, and its lack of basis therefore, is relevant evidence of the Defendant's continuing course of bad faith conduct. The weight to be afforded this evidence will be a matter for the jury to determine.

18.     By this action, the Plaintiff seeks to recover not only those monthly disability benefits that have accrued prior to the commencement of this action, but also benefits that have accrued during the nearly five years that this action has been pending.[3]  Thus, the evidence is relevant to the Defendant's bad faith in denying, and continuing to deny, disability benefits during the pendency of this litigation.[4]

## 2. Evidence Of The Defendant's Affirmative Defenses Is Not Unfairly Prejudicial

19.     The Defendant further argues that evidence relating to its affirmative defenses should be excluded pursuant to Fed. R. Evid. 403 on the grounds that it is unfairly prejudicial. Defendant claims that the evidence would be unfairly prejudicial because it would imply that the Defendant had ill-motives and intentions in denying benefits to the Plaintiff, while the evidence is clear that the Defendant's denial of benefits was not based upon Plaintiff's failure to disclose earlier treatment and diagnosis. See Motion, p. 4. The Defendant also claims that the evidence would draw attention away from the underlying issue of whether the Plaintiff is entitled to benefits under the Policy. Id. The Plaintiff disagrees.

---

[3] On January 25, 2007, the Plaintiff filed a motion to amend the complaint with a supporting memorandum of law (*Doc. Nos.* 99 and 100). By that motion, the Plaintiff seeks leave to make several amendments, including amendments to update the complaint to cover the periods of disability that have accrued during the pendency of this litigation. That motion is pending at this time.

[4] The Defendant, as with all parties in litigation, does enjoy a privilege that would prohibit the Plaintiff from asserting a cause of action for defamation based upon the matters asserted by the Defendant in its pleadings. However, as noted in *White*, in the context of the special relationship between an insurer and insured, the privilege does not operate to preclude evidence of the insurer's bad faith. See White, 40 Cal.3d at 888; 710 P.2d at 318.

8

20. The Defendant's argument presumes that the evidence is not relevant. However, as discussed above, because the Defendant owed the Plaintiff a continuing duty of good faith and fair dealing during the pendency of this litigation, its conduct in the litigation may be regarded as evidence of a continuing course of bad faith conduct and is relevant to the Plaintiff's bad faith.

21. Rule 403 allows the trial court to exclude relevant evidence on the ground of prejudice to the party against whom it is offered "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. For relevant evidence to be excluded under Rule 403, the imbalance must be substantial, and the prejudice must be unfair. Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997). "The prejudice that Rule 403 is concerned with involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." Id. (*citing*, i*nter alia* Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 618 (5th Cir. 1977) (" '[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party . . . the prejudice must be unfair").

22. That the evidence in question might imply that the Defendant had ill-motives in denying benefits merely indicates that the evidence is adverse and prejudicial to the Defendant and relevant to the Plaintiff's bad faith claim. It does not, however, demonstrate that the evidence is "unfairly" prejudicial. Furthermore, the Defendant's concerns could be remedied by an appropriate limiting instruction to the Jury. In the balance, the danger of any unfair prejudice is outweighed by the probative value of the evidence. Accordingly, the evidence should not be excluded under Rule 403.

23. The Defendant chose to introduce allegations of fraud and misrepresentation into this litigation. At the time the Defendant filed its Amended Answer, and when it refused Plaintiff's Rule 11 demand to withdraw the affirmative defenses, the Defendant was not concerned about the potentially prejudicial effect of its accusations against the Plaintiff. The

9

Defendant cannot now seek to expunge the record of its own misdeeds. Rather, it is completely appropriate for the Plaintiff to introduce the Defendant's conduct as further evidence of Defendant's bad faith.

**WHEREFORE**, the Plaintiff respectfully requests that the Court deny the Defendant's Motion in its entirety.

Dated: February 12, 2007
      at Norwalk, Connecticut

                              The Plaintiff,
                              JOHN D. LANE
                              By his attorneys,
                              JACOBS PARTNERS LLC

                    By:  /s/ *Robert M. Fleischer*
                              Robert M. Fleischer (CT11960)
                              Mark R. Jacobs (CT12255)
                              Merritt View
                              383 Main Avenue
                              Norwalk, CT 06851
                              Tel: (203) 846-6622

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 12, 2007, Plaintiff's Memorandum In Opposition To Defendant's Motion In Limine was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

    /s/ *Robert M. Fleischer*
Robert M. Fleischer (CT 11960)
Jacobs Partners LLC
Merritt View
383 Main Ave.
Norwalk, CT 06851
Phone: (203) 846-6622
Fax: (203) 846-6621
Email: robert.fleische@jacobs-partners.com