UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------------X
                                              :
JOHN D. LANE,                                 :
                                              :
      Plaintiff,                             :
                                              :
  -against-                                  :
                                              :   AMENDED
JEFFERSON PILOT FINANCIAL                     :   COMPLAINT and
INSURANCE COMPANY,                            :   **JURY DEMAND**
                                              :
      Defendant.                             :   March 15, 2007
------------------------------------------------------------------X

      The plaintiff, John D. Lane (alternatively the "Plaintiff" or "Lane"), by his attorneys, Jacobs Partners LLC, as and for his amended complaint against Jefferson Pilot Financial Insurance Company (alternatively the "Defendant" or "Jefferson Pilot"), pleads as follows:

## PARTIES

    1.    The Plaintiff is an individual who, at all relevant times, has resided, and continues to reside, at 263 Queens Grant Road, Fairfield, Connecticut.

    2.    Upon information and belief, the Defendant is an insurance company organized under the laws of a state other than the state of Connecticut, and provides insurance products, including individual disability income contracts. Further upon information and belief, Jefferson Pilot's principal place of business is located at One Granite Place, Concord, New Hampshire.

## JURISDICTION AND VENUE

    3.    Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The Plaintiff is a citizen of the State of Connecticut and the Defendant is a corporation incorporated under the laws of a state other than the state of Connecticut and has its principal place of business in a state other than the State of Connecticut. The amount in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000).

4.      Venue is proper in this District under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## BACKGROUND

**The Disability Income Insurance Policy**

5.      On October 28, 1994, The Chubb Insurance Group issued a Disability Income Policy, designated as policy number 009002259 (the "Policy"), in which Lane is the insured.

6.      Upon information and belief, Jefferson Pilot is the successor in interest to The Chubb Insurance Group, and is the current obligor under the Policy.

7.      The Policy is an "Own Occupation" type disability insurance policy, pursuant to which, and subject to specified limitations, Lane is entitled to receive a monthly disability insurance benefit for periods of total disability when, due to injuries or sickness, he is not able to perform the substantial and material duties of his occupation, and he is receiving care by a physician which is appropriate for the condition causing his disability.

8.      Further pursuant to the Policy, and subject to specified limitations, Lane is entitled to receive a monthly disability insurance benefit for periods of residual disability when, due to injuries or sickness, his loss of monthly income is equal to at least 20% of his prior monthly income while he is engaged in his occupation or another occupation, and he is receiving care by a physician which is appropriate for the condition causing his disability.

9.      The Policy contains a "disability elimination period" of 6 months, meaning that the insured must be continuously disabled for 6 months before benefits become payable under the Policy.

10.     Under the Policy, the Defendant is liable to pay the Plaintiff monthly disability benefits commencing up to one year and 90 days prior to the date the insured submits a written claim, subject to Plaintiff's satisfaction of the elimination period.

11. The Policy provides for automatic periodic increases in both the premium and the benefit payable; effective October 28, 1999, the monthly benefit payable in the event of total disability automatically increased to $21,038.34.

12. Lane timely and fully paid the Defendant, or its predecessor as the case may be, all of the required annual premiums for the Policy, and the Policy has remained in full force and effect since it was issued in October of 1994.

**Lane's Occupation**

13. For many years prior to the date the Policy was issued, Lane's occupation was a retail securities broker. By the time the Policy was issued in 1994, Lane's occupation had taken on attributes of both a retail securities broker and investment banker, wherein Lane, functioning as an investment banker, identified, negotiated and structured business investment transactions such as capital raising and other liquidity events, mergers, acquisitions and divestitures. As a retail securities broker, Lane sold securities in connection with such transactions.

14. Throughout the course of his career as a retail securities broker/ investment banker, Lane has been employed by various securities brokerage and/or investment banking firms, including and most recently, Somerset Financial Group, Inc., based in Westport, Connecticut, where he holds the title Managing Director of Capital Markets and Senior Vice President.

15. Throughout most of his career, Lane did not received salary or draw from the securities brokerage and investment banking firms that employed him; rather, he was paid strictly on commission basis from the revenue and fees generated by the business transactions that he successfully brought to completion.

16. As part of his occupation, Lane structures and arranges financing for a variety of business transactions, including capital raising and other liquidity events, and mergers, acquisitions and divestitures.

17.     In order to perform the material duties of his occupation, Lane is required to, in*ter alia*, identify viable business opportunities, identify and assemble the requisite parties, negotiate the terms and conditions with all of the participating parties, prepare stock offerings, conduct due diligence, prepare fairness opinions, and prepare qualified opinions and valuations for the transactions.

18.     Due to his ability to identify viable business transactions, perceive and resolve potential obstacles, focus on the required tasks, Lane was able to achieve significant financial success in his career, earning in some years nearly $1 million or more.

**Lane's Disability**

19.     Commencing sometime during 1999, Lane began to suffer the detrimental effects of mental depression, as a consequence of which, he began to have difficulty interacting with other people and performing the regular and necessary functions of his job. These manifestations, however, did not begin to impact Lane's earning capacity until late in 1999.

20.     By October 1, 1999, Lane's mental condition deteriorated to the point where his work and personal relationships began to suffer notably and Lane determined that he required professional treatment of his mental condition.

21.     Sometime in 1999, Lane sought treatment of his mental condition from Bert Diament, Ph D, of Westport, Connecticut, a licensed clinical psychologist.

22.     In about late May or early June, 2001, at Dr. Diament's suggestion, Lane sought to continue his treatment with a psychiatrist .

23.     Commencing on about June 8, 2001, Lane began treatment with Dr. Cyril Waynik ("Dr. Waynik") of Fairfield, Connecticut, a physician specializing in psychiatric medicine.

24.     Almost immediately after Lane began to treat with Dr. Waynik, Dr. Waynik diagnosed Lane with functionally incapacitating depression.

25. Lane has continued under the care of Dr. Waynick since he first began to see Dr. Waynick in June of 2001.

26. Notwithstanding his mental sickness, Lane continued throughout 1999, 2000 and 2001, and thereafter, to work in an attempt to be productive under his personal belief that he would be able to overcome his mental sickness and continue to enjoy success from his occupation.

27. Lane's mental condition continued to deteriorate throughout 1999, 2000, 2001 and on, and to date has not improved.

28. Throughout 1999, 2000, 2001 and on, the extent and existence of Lane's disability was manifested by, *inter alia*, the diminishment of his ability to communicate effectively with customers and other business people, the loss of his own self confidence, and a dramatic decrease in his income.

29. Specifically, Lane's average annual income from 1994 through 1999 was over $800,000, and he earned approximately $1 million in both 1998 and 1999.

30. In 2000, Lane's income decreased to approximately $307,000, most of which income was attributable to the completion of transactions that he had negotiated and sold in the prior year; and by 2001, Lane's income further declined to approximately $50,000, representing a 95% decrease from Lane's income in 1999.

31. Due to the nature of Lane's business and the manner in which he was compensated (commissions and fees from completed transactions) Lane was unable to fully appreciate and comprehend that his mental sickness rendered him functionally disabled until about May of 2001, well after the onset of the disability.

**Lane's Claim For Disability Benefits**

32. As a result of his mental sickness, the Plaintiff became totally disabled within the meaning of the Policy commencing prior to May of 2001.

33. Since the onset of his disability, the Plaintiff has been continuously totally disabled within the meaning of the Policy, and has been continuously under the care of a physician for treatment of his mental sickness.

34. On or about May 16, 2001, the Plaintiff advised the Defendant that he intended to file a claim for disability benefits under the Policy, and on May 25, 2001, the Plaintiff prepared a written claim for benefits, which, upon information and belief, was received by the Defendant on June 4, 2001.

35. By September, 2001, the Plaintiff satisfied the 6 month elimination period, at which point the Defendant was required under the Policy to pay the Plaintiff monthly disability benefits.

36. Pursuant to the terms of the Policy, the Plaintiff is entitled to receive monthly disability benefits until the Plaintiff's disability ceases or until the Plaintiff reaches age 65 on November 30, 2011.

37. Pursuant to the terms of the Policy, including the automatic benefit increase provision, the monthly disability benefit payable to the Plaintiff on account of his disability is $21,038.34.

38. The Plaintiff completed and sent to the Plaintiff all requisite claims forms and related documentation.

39. The Plaintiff has performed all conditions of the Policy required to be performed on his part.

40. The Defendant has received the medical report and correspondence by Dr. Waynik which confirm the Plaintiff's disability.

41. The Plaintiff has fully cooperated with the Defendant in its investigation of his claim.

42. After being put on notice of the Plaintiff's claim, the Defendant unreasonably, improperly and without justification stalled and delayed its investigation and determination of the Plaintiff's claim.

43. The Defendant has improperly and without justification failed and refused to pay the Plaintiff the monthly disability benefits due and owing to the Plaintiff under the Policy.

44. Despite the Plaintiff's repeated demands, the Defendant has refused and continues to refuse to make any disability payments to the Plaintiff.

45. Pursuant to Section 2.5 of the Policy, the Plaintiff is not liable for premiums once he has satisfied the elimination period. However, the Plaintiff continued to bill the Plaintiff for premiums, which the Plaintiff paid.

### FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

46. Plaintiff repeats and realleges paragraphs 1 - 45 of this Complaint as if fully set forth herein.

47. The Defendant breached its contract with Plaintiff by failing to pay him the disability insurance benefits due under the Policy.

48. The Defendant breach its contract with the Plaintiff by billing him for premiums and by not refunding premiums paid by the Plaintiff, in accordance with Section 2.5 of the Policy.

49. As a result of Defendant's breach, Plaintiff has been damaged in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## (BREACH OF IMPLIED COVENANT OF GOOD
## FAITH AND FAIR DEALING)

50.     Plaintiff repeats and realleges paragraphs 1 - 45 of the Complaint as if fully set forth herein.

51.     Under the Policy, the Defendant owed the Plaintiff a duty of good faith and fair dealing.

52.     Defendant breached its duty and the implied covenant of good faith and fair dealing by failing to conduct a timely and reasonable investigation of his claim, by failing and refusing to pay the Plaintiff the insurance disability benefits due him under the Policy.

53.     As a proximate cause of Defendant's breach, Plaintiff has suffered injuries in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment on his Complaint as follows:

(1)     monetary damages for the monthly benefits due and payable to the Plaintiff through the date of trial, in an amount to be determined at trial

(2)     interest under C.G.S. §37-3a in an amount to be determined at trial,

(3)     costs;

(4)     a declaratory judgment pursuant to 28 U.S.C. § 2201 that Plaintiff is totally disabled within the meanings of the Policy and thereby entitled to recover benefits under the Policy; and

(5)     such other and further relief as this Court deems just and proper.

## JURY DEMAND

The Plaintiff requests trial by jury on all issues in this case that may properly be tried by a jury.

Dated: March 15, 2007
       Norwalk, Connecticut

                                    THE PLAINTIFF,
                                    John D. Lane
                                    By his attorneys
                                    JACOBS PARTNERS LLC

                       By:   /s/ Robert M. Fleischer
                                    Mark R. Jacobs (CT 12255)
                                    Robert M. Fleischer (CT 11960)
                                    Merritt View
                                    383 Main Avenue
                                    Norwalk, CT 06851
                                    Tel: (203) 846-6622
                                    Fax: (203) 846-6621